**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

Erik J.,[1]

                Plaintiff,

    v.

Frank Bisignano,
_Acting Commissioner of Social Security,_

                Defendant.

Case No. 25-cv-2515 (SGE)

**ORDER**

_____

This matter is before the Court and under its jurisdiction pursuant to 42 U.S.C. § 405(g). On appeal, Plaintiff Erik J. ("Mr. J") seeks judicial review of the final decision of the Commissioner of Social Security Administration (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties consented to the disposition of the present case by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). Both Mr. J and the Commissioner have fully briefed their positions, and this matter is now ripe for review. (Dkt. 8; Dkt. 14.) For the reasons below, the Court **DENIES** Mr. J's request for relief and **GRANTS** the Commissioner's request for relief.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name, only his first name and last initial are provided.

## BACKGROUND

Mr. J applied for disability insurance benefits under Title II and supplemental security income under Title XVI on December 16, 2021. (R. 245-258.)[2] In both applications Mr. J alleged a disability onset date of November 18, 2013. (R. 245, 248, 281.) Mr. J's claims were initially denied on October 17, 2022, and upon reconsideration on March 20, 2023. (R. 87-108; 109-135.) Mr. J then requested an ALJ review the denials. (R. 183-84.) On November 29, 2023,[3] the ALJ held an administrative hearing. (R. 54-86.) Mr. J and an independent vocational expert ("VE") testified. (R. 54-55.) At the hearing, Mr. J amended his alleged disability onset date to December 16, 2021. (R. 61.) Mr. J acknowledged that as a result of amending the onset date he would not be entitled to DIB under Title II. (R. 61.) The ALJ issued her decision on February 15, 2024. (R. 8-32.) First, because Mr. J elected, at the hearing, to amend his disability onset date and withdraw his request for DIB, the ALJ dismissed Mr. J's DIB claim. (R. 11-12.) Then the ALJ proceeded with her analysis of Mr. J's SSI claim and determined that he was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (R. 27.)

---

[2] Throughout this Order, the Court refers to the Administrative Record (Dkts. 7, 7-1, 7-2) by the abbreviation "R" Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of each page of the record.

[3] Mr. J states that the hearing took place on April 28, 2023 (Dkt. 8 at 4). However, April 28, 2023, is the date that Mr. J's counsel completed the hearing agreement form, not the date the hearing took place. (R. 222-23.)

In reaching her decision the ALJ followed the five-step sequential analysis process laid out in § 416.920(a).[4] At step one the ALJ determined that Mr. J had not engaged in substantial gainful activity since December 16, 2021, the amended disability onset date. (R. 14.) At step two, the ALJ found that Plaintiff had the following severe impairment: attention deficit hyperactivity disorder, depressive disorder, and inguinal hernia. (R. 14.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or is equal to the listed impairments. (R. 14-17.) At step four, the ALJ made the following residual functional capacity ("RFC") determination:

> [C]laimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b). He is able to occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant is able to tolerate occasional exposure to hazards, including unprotected heights, dangerous machinery, and open bodies of water. He can understand, remember, and carry out simple instructions. The claimant can frequently interact with supervisors and occasionally interact with coworkers and the public. Finally, he is able to deal with occasional changes in a routine work setting.

(R. 17.) The ALJ also determined that Plaintiff was unable to perform any of his past relevant work based on his RFC. (R. 25.)

---

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i–v).

At step five, the ALJ found that other jobs existed in significant numbers in the national economy that Mr. J, given his age, education, work experience, and RFC, could perform. (R. 25-26.) Relying on the testimony from the VE, the ALJ found that Plaintiff could perform the job requirements of "small parts assembler," of which there are 18,000 jobs available nationally; "housekeeper," of which there are 329,000 jobs nationally; and "mail sorter," of which there are 17,600 jobs available nationally. (R. 26.) Because the ALJ determined that Mr. J could perform jobs that exist in significant numbers in the national economy, the ALJ found that he was not disabled. (R. 26)

Mr. J sought review of the ALJ's decision by the Appeals Council, which was denied on March 17, 2025. (R. 1-7.) Mr. J then filed this action challenging the ALJ's decision. (Dkt. 1.)

## STANDARD OF REVIEW

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g). Under this review, the District Court is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p.

4

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The decision of the ALJ to deny benefits will not be reversed by the Court "so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

**ANALYSIS**

Mr. J presents one issue to the Court— that the ALJ failed to properly evaluate the consistency of Dr. Karayusuf's opinion.[5] (Dkt. 8 at 2, 8.) The Commissioner contends the ALJ properly considered the consistency factor and urges the Court to affirm the ALJ's decision. (Dkt. 14.)

**I.      The ALJ Properly Evaluated the Consistency of Dr. Karayusuf's Opinion**

The Social Security regulations require the ALJ to explain how persuasive each medical opinion is and to explain the "supportability and consistency" of each opinion. 20 C.F.R. § 416.920c(a). "ALJs evaluate the persuasiveness of medical opinions by

---

[5] Mr. J asserts that the ALJ did not properly evaluate Mr. Karayusuf's opinion under 20 C.F.R. § 404.1520c. As discussed above, Mr. J acknowledged that as a result of amending the onset date he would not be entitled to DIB under Title II, and the ALJ denied his request for DIB on that basis. (R. 11-12, 61.) Thus, the applicable regulation for evaluation of Mr. J's SSI claim is. 20 C.F.R. § 416.920c, not 20 C.F.R. § 404.1520c.

considering [factors including] (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022). The first two factors of supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how she considered the factors of supportability and consistency in her decision. 20 C.F.R. § 416.920c(b)(2). However, "[t]he ALJ's brevity is not reversible error." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021). Although an explanation "need not be exhaustive," "boilerplate or blanket statements will not do." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (cleaned up). An ALJ's failure to explain either supportability or consistency is reversible error. *Id.*

A reviewing court's inquiry is not whether it agrees "with the ALJ's evaluation of the record evidence" in explaining the supportability and consistency factors; such an analysis would be an improper reweighing of the evidence. *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025) (citations omitted); *see also Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (*citing Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). Rather, the court's review is limited to "whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors." *Cropper*, 136 F.4th at 814; *see, e.g., Berry v. Kijakazi*, Case no. 20-cv-0890 (RLW), 2021 WL 4459699, at *8 (E.D. Mo. Sept. 29, 2021). Additionally, the ALJ is not required to identify each and every scrap of evidence that supports or detracts from the medical

6

opinions, but she must at least set forth reasoning "clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631; *see also Diane M. W. v. Kijakazi*, Case no. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022) ("The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed.").

The regulations define consistency. "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). In other words, consistency looks at how well the medical source's opinion fits the evidence from other sources. *See Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 188-89 (S.D.N.Y. 2022). The regulations require that the ALJ explain how they considered the consistency factors in evaluating a psychological expert's prior administrative factual findings. 20 C.F.R. § 416.920c(b)(2); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB); 2022 WL 4463901, at *2 (D. Minn. Sept. 26, 2022). An ALJ's failure to articulate how the ALJ considered the consistency factor is a legal error that requires remand. *Susan H. v. Kijakazi,* No. 21-cv-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B.*, 2022 WL 4463901, at *2; *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (*citing Lucus*, 960 F.3d at 1070).

In Mr. J's case, the ALJ found Dr. Karayusuf's opinion unpersuasive. In making this finding the ALJ wrote:

Alford Karayusuf, M.D., the consultative psychiatric examiner, opined on February 22, 2023, that based strictly on his psychiatric and not his physical condition, the claimant was able to understand, retain and follow simple instructions. He was restricted to work that involved brief, superficial, infrequent interactions with fellow workers, supervisors and the public. Within these parameters and in the context of performing only simple, routine, repetitive, concrete, tangible tasks, he was able to maintain pace and persistence. (13F2) The undersigned found Dr. Karayusuf's opinion unpersuasive. Dr. Karayusuf included terms that were not policy compliant and that lacked vocational relevance. What was more, Dr. Karayusuf's opinion was inconsistent with his evaluation and the psychometric testing that was within normal limits. It was also inconsistent with the claimant's complete lack of mental health treatment and self-report that he got along with others.

(R. 24.)

Mr. J disagrees with the ALJ's evaluation of Dr. Karayusuf's opinion, arguing that the ALJ failed to address the consistency factor required by the regulations. However, as the Commissioner points out, Mr. J's argument concedes that the ALJ addressed the consistency factor and focuses instead on what he describes is the "ALJ's cherry-pick[ing] isolated pieces of evidence" and ignoring other evidence which he alleges provides substantial evidence supporting Dr. Karayusuf's opinion. (Dkt. 8 at 8; Dkt. 14 at 7.) However, the Eighth Circuit rejected a similar argument applying the "substantial evidence" standard to an ALJ's consistency analysis, finding it "fundamentally inconsistent with our statutorily mandated substantial evidence standard of review [because] it invites us to reweigh the evidence of record regarding the supportability and consistency factors, rather than uphold the ALJ's finding that [a] medical opinion[] [is] not persuasive unless that finding 'falls outside the available zone of choice.'" *Cropper*, 136 F.4th at 814 (*quoting Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024)).

8

The issue then, is not whether the ALJ addressed the consistency factor, because she did, or whether substantial evidence supports the ALJ's consistency analysis. The question before this Court is whether the ALJ's analysis of Mr. Karayusuf's opinion is "clear enough to allow for appropriate judicial review" and within the "zone of choice." *Grindley*, 9 F.4th at 631; *Cropper*, 136 F.4th at 814 ("Thus, we limit our review under the revised regulations to whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors, not whether we agree with the ALJ's evaluation of the record evidence on those issues. This of course includes review of whether the ALJ's reasoning is clear enough to allow for appropriate judicial review.") (cleaned up).

Here, the ALJ's analysis of Mr. Karayusuf's opinion is sparse, however, it is not so sparse as to warrant reversal when the ALJ's decision is read as a whole. *See Manesha F. v. Bisignano*, No. 25-CV-849 (JRT/DJF), 2026 WL 385991, at * 6 ("An ALJ's conclusions regarding the consistency and supportability factors must be read in the context of the decision in its entirety.") (cleaned up) (D. Minn. Jan. 15, 2026), *R&R adopted*, 2026 WL 383745 (D. Minn. Feb. 11, 2026); *Rachel M.G. v. Bisignano*, No. CV 25-2157 (PAM/EMB), 2026 WL 1296100, at * 3 (D. Minn. May 12, 2026) ("Ideally, the ALJ would have identified examples of the supportability and consistency factors in this paragraph of analysis in her opinion. But earlier in her opinion, the ALJ thoroughly explained the medical evidence that supported her conclusions, and any error here is harmless.").

The ALJ gave specific reasons for finding Dr. Karayusuf's opinion inconsistent with the medical record, and ultimately not persuasive, after thoroughly reviewing the record and explaining how the evidence did not support "limitations greater than" those included

9

in the RFC. (R. 18, 23-24.) For example, the ALJ discussed that "there was absolutely no record of [Mr. J] seeking" mental health treatment and noted that Mr. J's mental exams were "within normal limits," that he gets along with others, and lives with others. (R. 18, 23-24.)

Mr. J takes issue with the ALJ's consistency finding, asserting that each reason the ALJ gave for finding the opinion not consistent "reflects cherry-picking of evidence while ignoring substantial record support for Dr. Karayusuf's opinion." (Dkt. 8 at 9 (citing R. 2627).) Mr. J does not argue that the reasons cited by the ALJ are unsupported by the record.[6] Rather he points to notations in the record that Mr. J's anxiety and depression symptoms were not relieved by antidepressants, that he struggles with maintaining contact with family, and that he struggles in crowds and when people get too close to him. (Dkt. 8 at 9-12 (citing R. 70-71, 119-21, 1101, 2251, 2290, 2625-26, 2643).) However, Mr. J's selective citation to other evidence in the record asks the Court to reevaluate the persuasiveness of Dr. Karayusuf's opinion by reweighing the evidence which the Court cannot do.[7] *Cropper*, 136 F.4th at 814.[8]

---

[6] For example, Mr. J does not refute the ALJ's conclusion that the record evidence shows he has not sought mental health treatment. (Dkt. 8 at 9-10.)

[7] Notably, the ALJ cited some of the same portions of the record that Mr. J points to, again demonstrating that Mr. J asks this Court to reweigh the same evidence considered by the ALJ. (R. 18 (citing R. 2626), R. 22 (citing R. 2639-43), R. 23 (citing R. 2625-26, 2643).)

[8] To the extent that Mr. J's argument also vaguely asserts that substantial evidence does not support the ALJ's conclusion that Dr. Karayusuf's opinion was *not persuasive* that argument fails for the same reasons. *See Ashley A. v. Bisignano*, No. 25-CV-0745 (LMP/DTS), 2025 WL 3906304, at * 4 (D. Minn. Sept. 17, 2025), *R&R adopted*, 2025 WL

In sum, the Court concludes that the ALJ properly evaluated the consistency of Dr. Karayusuf's opinion to the record as required by the regulation, that the ALJ's explanation was clear enough to allow for judicial review, and declines to reweigh the evidence.

### ORDER

Therefore, based on the foregoing, and on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Mr. J's request for relief (Dkt. 8) is **DENIED**.

2. The Commissioner's request for relief (Dkt. 14) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: June 15, 2026

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge

---

3443600 (D. Minn. Dec. 1, 2025) ("[S]ummarizing contrary facts in the record does not move the needle on substantial evidence.").